HENRIETTA B. CAMPBELL, as Administratrix with the Will Annexed of JOHN H. CAMPBELL, Deceased, Respondent, *v.* JOHN C. RODGERS, Appellant.

First Department, May 3, 1918.

Waters and watercourses — agreement to compensate landowner for right to dredge navigable arm of the sea — estoppel — when part payment of contract price does not estop promisor from contesting title of promisee to lands under water — deeds not conveying title to lands under navigable waters — acts not establishing title by adverse possession — title to lands under navigable waters is in the State.

Where the defendant, who had permission from the War Department of the United States to dredge a channel in a creek which was a tidal stream and an arm of the sea, made a contract on the demand of the plaintiff's

intestate, an adjoining landowner who claimed title to the lands beneath said waters, to pay a certain sum yearly for the privilege of dredging and agreed to build a dike for the benefit of the intestate, the defendant by making one payment to the intestate was not estopped from subsequently contesting his title and defending for want and failure of consideration for the contract. This, because while the defendant had reason to doubt the validity of the plaintiff's claim of title, he was not in possession of all the facts at the time of making said payment, which was done to make his peace and to enable him to continue to use the channel without molestation.

Deeds under which the plaintiff's intestate claimed title to the lands beneath the waters of said navigable creek examined, and *held*, insufficient to show a title to the lands claimed by the intestate.

The fact that the intestate for over twenty years maintained posts supporting wires running to the border of the creek and planted oysters and clams under waters on the border of the creek and prevented other persons from harvesting the same and warned off trespassers did not establish a title by adverse possession or prescription against private owners, and still less *so* as against the State.

As said waters are a tidal stream and an arm of the sea the title to the bed thereof to the high-water mark on either side is in the State.

APPEAL by the defendant, John C. Rodgers, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of August, 1917, upon the report of a referee appointed to hear and determine the issues, and also from an order entered in said clerk's office on the 16th day of August, 1917, granting plaintiff an extra allowance of costs.

*Thomas F. Conway* of counsel [*Thomas E. O'Brien* with him on the brief], for the appellant.

*Gilbert Ray Hawes,* for the respondent.

LAUGHLIN, J.:

This is an action at law to recover on and also for breaches of a contract in writing made between defendant and J. H. Campbell, plaintiff's testator, on the 11th day of November, 1908. The issues were referred by consent and the referee found in favor of plaintiff substantially as claimed.

At the head of a bay on the northerly shore of Long Island sound off the coast now embraced in Bronx county there has

been from time immemorial a channel, known as Givans Creek, apparently extending from the highland, designated in the testimony as " foot hills," forming the coast in an irregular course through marsh lands to a bay of Long Island sound. Through this creek the tide ebbs and flows, submerging at high tide, which rises from five to seven feet above low tide, low land covered with sedge extending back from the exterior lines of the channel several hundred feet at places and the water inundates, at times, higher lands beyond known as salt meadows. This creek at its outlet at the bay toward the east is intersected by Eastchester Creek or Hutchinson River which concededly is a navigable stream and has been dredged and improved under the supervision of the War Department of the United States. Many years ago a railroad was constructed on a trestle along or across the head of the bay crossing the intersection of the outlet of these two creeks with a drawbridge over such intersection. The depth of water at low tide in Givans Creek where it passes under the railroad is two feet and at high tide it is seven or nine feet. During a period of more than twenty years before the contract in question was made Givans Creek had been extensively navigated by the public, generally by row boats and launches for fishing and hunting and for pleasure and there were small docks thereon where such boats were let for hire; but there appears to have been no occasion for using it otherwise and it was too shallow for navigation by larger craft, excepting at high tide. The defendant owned or was interested in a dock on the right or southerly bank of the creek a short distance, probably a few hundred feet, above its outlet and in 1908 one of his sons took the contract for improving Gunhill Road in the vicinity of said dock. It appears that the defendant had some interest in the contract and was desirous of bringing material, for use thereon, by water on scows to said dock. That required the dredging of a basin opposite the dock and the deepening of the channel of Givans Creek between the dock and the railroad trestle. He accordingly applied to the War Department for permission to do this work and with his application submitted blueprints showing the work to be done; and a formal permit was issued therefor on the 2d of September, 1908, which provided, among other

things, that the work so far as the interests of navigation were concerned, should be subject to the supervision and approval of the Corps of Engineers of the United States. In doing the work defendant used a steam dredge which came in from the sound under her own steam and went up the creek at high tide to the dock. The basin at the dock was first excavated and then defendant proceeded to deepen the channel toward the bay. On the evening of November 10, 1908, Campbell, who resided on a high knoll known as the Hammock, about a quarter of a mile up and across the creek, gave defendant notice that he claimed title to the bed of the creek at that point and forbade any further dredging. Negotiations were then opened between him and defendant and the next morning the agreement upon which the action is based was signed by them. The agreement after providing that Campbell, the party of the first part, agreed " to allow " defendant, the party of the second part, to excavate and dredge a channel to a depth of three feet below low water between Givans Creek and Eastchester Creek as shown on a map annexed *and to deposit the excavated material* " on the surface of the high ground owned by him adjacent to the line of said channel," further provided, so far as here material, as follows:

" If the said deposited material does not raise the surface above the level of high tide, then the party of the second part agrees to deposit such additional material as will bring the surface above high tide for a width of at least twelve (12) feet on a straight line from the bank to the sign board now existing on said high ground. The said channel is to be made of any width that the said party of the second part may select, not to exceed fifty feet, along and through the said creek.

" The said party of the second part agrees to erect a retaining bulkhead at the margin of the bank of the property belonging to said party of the first part to a width of twenty (20) feet; the party of the first part agrees to furnish all material to be used in the construction of said bulkhead and the said party of the second part agrees to build same as the said party of the first part may direct.

" The said party of the second part further agrees to dredge a channel of at least twenty (20) feet wide and three (3)

feet deep below low water in a direct line from the face of said bulkhead to the said above mentioned channel.

" It being the intention of said parties hereto that said Rodgers is building the said first mentioned channel for the purpose of floating material to a dock to be built by him on the south side of said Givens Creek, the said party of the second part agrees to pay to the said party of the first part the sum of Six Hundred Dollars ($600.00) a year, payable on the 1st of January, and 1st of July of each year, in equal installments, while using said channel for said purposes, for a period of three years, with the right of renewal for an additional period of one, two or three years, should he desire, at Twelve Hundred Dollars ($1,200.00) per year, it being understood that the terms for said payments are made conditional on the right of the party of the first part to grant or withhold the privilege of dredging the said channel as indicated."

The work of deepening the channel was then resumed and within a few weeks thereafter finished and defendant did no further dredging and thereafter in no manner interfered with the channel otherwise than by using it for navigation. The defendant, however, in completing the dredging exceeded the permit from the War Department and from Campbell by excavating at some points to the width of one hundred feet. The defendant the day after he made the agreement with Campbell employed a title company to advise him with respect to Campbell's right to prohibit the dredging and received an opinion to the effect that no basis for Campbell's claim could be found but refusing to guarantee defendant to that effect and intimating that other attorneys and the courts might view it otherwise. A copy of the opinion was on December fourth sent to Campbell who regarded it merely as the opinion of an individual and insisted upon his right " as owner of the property by deed " to impose the conditions and on January sixth thereafter formally demanded payment for the first year. The defendant replied, January 15, 1909, manifesting a desire to adjust the controversy rather than to litigate and suggested arbitration. Campbell again wrote January twenty-first refusing arbitration and claiming that he owned title to *low-water mark* when the territory was annexed to the city and demanded that defendant live up to the agree-

ment or declare it canceled. Defendant evidently asked for proof of Campbell's title and he replied January 29, 1909, saying his deed spoke for itself and gave notice that unless payment was made by February fifth he would consider that defendant intended to annul the contract. After some further negotiations, which only appear by inference, the defendant paid $300 and received from Campbell the following:

"NEW YORK, *February* 16*th*, 1909.

"Received from John C. Rodgers the sum of Three Hundred Dollars ($300) being payment in full for one year for allowing the said John C. Rodgers to excavate and dredge a channel for a depth of at least three (3) feet below low water between Givan's Creek and Eastchester Creek and to deposit said excavated material on the surface of the high ground owned by me adjoining the lines of said channel as provided for under agreement made and concluded the 11th day of November, 1908, between J. H. Campbell and J. C. Rodgers. Said payment of Three Hundred Dollars ($300.00) being in full for one year, being modification of the terms of the payment.

"(Signed) J. H. CAMPBELL."

The evidence shows that defendant did no further dredging after making said payment and never thereafter in any manner interfered with the premises claimed to be owned by Campbell or with Givans Creek otherwise than by navigating the deepened channel with tugs and scows to bring in material for the Gunhill Road improvement which was completed that year. There is also evidence that tugs bearing defendant's name made like use of the dredged channel in 1911 and 1912, for bringing material to said dock for use on another contract between the city and defendant's brother for improving Baychester Avenue near said dock. The defendant failed and refused to make any further payment under the contract or to do the work on Campbell's land contemplated thereby.

The defendant pleaded want and failure of consideration in that Campbell had not the right to stop the work. Plaintiff maintains that Campbell had title to low-water mark, and, therefore, had such right and also pleaded that defendant had with full knowledge with respect to Campbell's title ratified the

contract and waived any right he might have had to challenge its validity for want of consideration. The learned referee ruled that defendant by making the payment ratified the agreement and waived his right to question the consideration. In the circumstances, therefore, that is the first point to be considered, for if defendant is precluded from questioning the consideration, it is not material whether the work might lawfully have been done without Campbell's consent. I am of opinion that such payment did not preclude defendant from litigating Campbell's right to stop the deepening of the channel. It must be borne in mind that Campbell was still insisting on his title to low-water mark and while defendant had reason to doubt it still he was not in possession of all the facts and he may have preferred to make his peace for what he had done and desired to do by making this reduced payment to insure him against any action for what had been done and in the right to use the channel without molestation for the year 1909 which would enable him to bring in material for the Gunhill Road improvement. Campbell claimed, and the evidence shows, that the work which defendant had done destroyed oyster and clam beds which he had planted in the mud banks of the channel under his claim of ownership and that defendant had dumped excavated material on the mud banks and sedge on Campbell's side of the channel obstructing and interfering with the use of runways which Campbell had constructed for access to Givans Creek from the premises he occupied. The defendant by this payment protected himself against any action that might have been brought against him on account of the dredging which had then been completed and against being enjoined from using the channel that year. There is nothing in the mere acceptance by defendant of the receipt given by Campbell which ratified the original agreement *in toto* or obligated the defendant to make the improvement on the lands claimed to be owned by Campbell as contemplated by the original contract. In fact it appears that it would have been unlawful for the defendant to have erected " a retaining bulkhead at the margin of the bank of the property " claimed to be owned by Campbell as required by the contract, for the plaintiff showed that the harbor commission of the city of New York and the Federal

government had both established a bulkhead line on Givans Creek far back of the bank of the channel and, as shown by the evidence, about 150 feet back of it at that point. The defendant, therefore, I think, by making the payment merely bought his peace for what he had done and obtained immunity from molestation in using the channel that year; but he did not waive his right to claim thereafter that Campbell had no right or title by which he could levy toll or tribute on the defendant for using the channel unless his right, title or interest was such that he might lawfully forbid and prevent such use which was the express condition on which the original contract was made.

The Hammock on which Campbell resided consisted of from one and a half to several acres and was several feet above high-water mark, and was surrounded by salt meadows between it and the shore and salt meadows and sedge between it and Givans Creek and Eastchester Creek or Hutchinson River. Fresh water for use at the Hammock had to be brought from across Givans Creek from near defendant's dock and access to the Hammock from the mainland was principally by boats along and across Givans Creek; but it appears that the mainland could be reached on foot across the salt meadows and around the foot hills. There was, however, no road or path. Campbell entered into possession of the Hammock and occupied it with his family under a lease from one Odell for five years from April 1, 1887. The lease described the premises as salt meadows known as " Odell meadows & Hammock " and as containing about " 10 or 12 acres " bounded on the north, east and south by meadows, the owners of which were named, and "on west by Givans creek." There was then a small dwelling house and other small buildings on the Hammock and Campbell leased part of the premises to a fishing club which erected a clubhouse thereon and used it. The only record or other title shown in Odell was a deed from Lavinia Jones, September 2, 1874, by the same description by which the premises had been deeded to her by Henry A. Valentine and others May 24, 1864, which described them as being salt meadow land bounded north and south by meadow land of others named and on the east " by a Creek running west of Goose Island in Eastchester Creek " and " on the west by a

small Creek " and as containing about four acres more or less. Campbell remained in possession and on the 2d of May, 1892, received a deed from his landlord by the same description as in the deed to him.   The original deed of the land lying between Baychester Creek or Hutchinsons River and the creek now known as Givans Creek embracing the premises above high-water mark now claimed to be owned by plaintiff was by Governor General Nichols, March 9, 1666, and it described them as bounded on the east and north by " Hutchinsons river " and south " by a certaine creek the mouth whereof openeth to the southeast " and including the meadows theretofore called " Hutchinsons meadows " and certain uplands between Hutchinsons and Rattlesnake brooks for half a mile northwest.   The plaintiff has not been able to show an unbroken chain of title, from the original grantee or title to the entire premises claimed.   The learned referee made no finding with respect to Campbell's title or possession; but merely found as a fact that " plaintiff had a right to grant or withhold the privilege of dredging the said channel provided for in said contract," and the only conclusion of law is one with respect to the amount plaintiff was deemed entitled to recover.   The referee in his opinion, however, without expressing the opinion that plaintiff had shown an undivided half interest in the premises claimed in Campbell, proceeded to discuss what would be his rights if he did and then expressed the opinion that plaintiff's claim of title to the upland by prescription was established.   In addition to the facts already stated in this opinion the referee expressed the opinion that the evidence showed that when Campbell took possession the premises were surrounded, with the exception of the frontage on Givans Creek, " by a line of stone monuments which apparently had been there for a considerable time," and that he erected on the line of the stone monuments " some wooden posts along the top of which he strung a wire coming down to each side of the border of the creek, so that the premises were entirely enclosed by this enclosure with the exception of the line on the border of the creek," and that Campbell planted oysters and clams under the water " on the border of the creek " and " prevented people from oystering and clamming and repeatedly warned off trespassers claiming

First Department, May, 1918.          [Vol. 182.

that the property was his own." On these facts the referee was of opinion that Campbell and his predecessors in title had been in open and undisputed possession for a period of at least twenty-one years holding them adversely against the world and that his title to "that portion of the premises above high water mark * * * was complete by prescription." It is not stated in the opinion, however, where high-water mark was and the record evidence shows that it was above all points where the defendant did any work. We do not agree with the learned referee that those facts would give title by adverse possession or prescription even against private owners; but upon no theory would they give title against the State. The referee then expressed the opinion that Givans Creek was not a navigable stream and that, therefore, the prescriptive title of Campbell extended to the middle of the creek. It is quite evident that the case was decided on that theory. We are of opinion that plaintiff showed no title by prescription or otherwise to any part of the channel where the defendant dredged or excavated. Givans Creek at the points in question, at least, was plainly a tidal stream and an arm of the sea and title to the bed thereof and to high-water mark on either side remained in the Sovereign under the original grant to which reference has been made and is now in the State. (*Smith* v. *City of Rochester*, 92 N. Y. 463; *People* v. *Tibbetts*, 19 id. 523, 526; *Ex parte Jennings*, 6 Cow. 518; *Mayor, etc.,* v. *Hart,* 95 N. Y. 443; *Sage* v. *Mayor,* 154 id. 61; *DeLancey* v. *Piepgras*, 138 id. 26; *Matter of Mayor, etc.* [*Extension of Riverside Park*], 182 id. 361; *People ex rel. Loomis* v. *Canal Appraisers*, 33 id. 461; *Matter of Commissioners of State Reservation*, 37 Hun, 537, 545; *People* v. *Steeplechase Park Co.,* 218 N. Y. 459, 473.) That this was such a stream was, in effect, conceded by counsel for plaintiff on the trial for he admitted that the dredging could not lawfully be done without a permit from the United States. Of course if abutting owners owned the fee to the bed of the creek no such permit would have been required.

It follows that the judgment should be reversed and all findings of fact and conclusions of law inconsistent with these views should be specified in the order and reversed and appropriate findings of fact and conclusions of law in accord-

ance with these views and dismissing the complaint, with costs, made and incorporated in the order to be settled on notice.

CLARKE, P. J., DOWLING, PAGE and DAVIS, JJ., concurred.

Judgment reversed and complaint dismissed, with costs. Order to be settled on notice.